IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** Case No. 1:20-cr-201 (TSE) |
| v. | **Count 1**: 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) |
| ABDUL RASAK GARUBA, | |
| Defendant. | **Counts 2-3**: 18 U.S.C. §§ 1957 and 2 (Financial Transactions in Illegal Proceeds) |

## INDICTMENT

August 2020 Term — Alexandria

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

### THE DEFENDANT

1.     ABDUL RASAK GARUBA ("GARUBA") was a naturalized citizen of the

United States. GARUBA maintained a residence in Woodbridge, Virginia, within the Eastern

District of Virginia. GARUBA was the sole proprietor of Revival Trade Links, Inc., Garuba

Auto Nigeria Limited, and Garuba's Auto LLC.

### THE VICTIMS

2.     Victim 1 was a resident of Ohio. In and around May 2017, Victim 1 began a

romantic relationship with an individual using the name "Matt Stierand" on Zoosk, which is an

online dating website. Victim 1 and "Stierand" communicated by email, telephone, and Viber,

which is an instant messaging software application. "Stierand" represented that he was a man

and involved in building projects. "Stierand" claimed that all of his funds were being used for building projects. "Stierand" asked Victim 1 to provide him funds, which he stated that he would use to finish his projects. "Stierand" promised to pay back Victim 1.

3.      Victim 2 was a resident of California. In and around July 2017, Victim 2 began a romantic relationship with an individual using the name "Dixie Toy" on eHarmony.com, which is a dating website. Victim 2 and "Toy" communicated via text message, email, and on the phone. "Toy" represented that she was a woman and from California. Over the course of their relationship, "Toy" informed Victim 2 that she moved to Indiana and then later to the United Kingdom. "Toy" asked Victim 2 to provide her funds, which she stated she would use to pay taxes and fees associated with a multimillion-dollar inheritance that she was unable to access. "Toy" promised to pay back Victim 2.

4.      Victim 3 was a resident of Ohio. In and around July 2017, Victim 3 began a romantic relationship with an individual using the name "Robert Henry Phillip" on Match.com. Victim 3 and "Phillip" communicated via text message and email. "Phillip" represented that he was a man and lived in Arizona. "Phillip" informed Victim 3 that he dealt in rare coins and was later located in South Africa with his six-year-old son. "Phillip" asked Victim 3 to send him funds, which he stated he would use for various purposes including, but not limited to, banking transaction fees in South Africa. "Phillip" promised to pay back Victim 3.

5.      Victim 4 was a resident of Colorado. In and around July 2017, Victim 4 began a romantic relationship with an individual using the name "Lavern Lane" on Facebook, which is a social media application. Victim 4 and "Lane" communicated via Facebook and text message. "Lane" represented that she was a woman and lived in Oregon with her daughter. "Lane" asked Victim 4 to send her funds, which she stated she would use for various purposes including, but

2

not limited to, expenses arising from family emergencies. "Lane" promised to pay back Victim
4.

6.      Victim 5 was a resident of Mississippi. From in and around 2015 until in and
around 2018, Victim 5 met several unknown co-conspirators purporting to be women interested
in a romantic relationship with him on various dating websites. Victim 5 began romantic
relationships with these unknown co-conspirators and mainly communicated with the unknown
co-conspirators via text message, email, and telephone. The unknown co-conspirators asked
Victim 5 to send them funds, which they stated they would use for various purposes including,
but not limited to, purchasing airline tickets and paying for medical and attorney fees. The
unknown co-conspirators promised to pay back Victim 5.

7.      Victim 6 was a resident of Alabama. In and around January 2017, Victim 6 began
a romantic relationship with an individual using the name "Tiffany Anne Norris" on Match.com.
Victim 6 and "Norris" mainly communicated via text message. "Norris" represented to Victim 6
that she was a woman. "Norris" stated that she was born in Texas, but moved to Malaysia at a
young age. "Norris" claimed that her father died when she was young and left her an inheritance
worth millions of dollars; however, "Norris" claimed that she could not access this inheritance.
During the course of their relationship, "Norris" fraudulently induced Victim 6 to provide her
funds, which she stated she would then use for various reasons. "Norris" promised to pay back
Victim 6.

TERMINOLOGY

8.      Romance scams target persons looking for romantic partners or friendship on
dating websites and other social media platforms. The scammers may create profiles using
fictitious or fake names, locations, images, and personas, allowing the scammers to cultivate

3

relationships with prospective romance scam victims. Victims may be convinced to provide money or gifts to the scammers, or may be asked to conduct transactions on behalf of the scammers.

## COUNT 1

### *(Conspiracy to Commit Money Laundering)*

9.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 8 of this Indictment.

10.     From a date unknown, but by at least in or around February 2016 and continuing through in and around May 2019, the exact dates being unknown to the Grand Jury, within the Eastern District of Virginia and elsewhere, the defendant, ABDUL RASAK GARUBA, did knowingly and intentionally combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

    a.  to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is wire fraud, conspiracy to commit wire fraud, mail fraud, and conspiracy to commit mail fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i); and

    b.  to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived

from a specified unlawful activity, that is, wire fraud, conspiracy to commit wire
fraud, mail fraud, and conspiracy to commit mail fraud, in violation of Title 18,
United States Code, Section 1957.

## PURPOSES AND OBJECTS OF THE CONSPIRACY

The primary objects of the conspiracy were for the conspirators to enrich themselves by
fraudulently obtaining, and causing to be fraudulently obtained, monies from victims through the
use of "romance scams" via electronic communications, and to conceal and obscure the source of
the fraudulently obtained proceeds they received by using the proceeds to purchase automobiles
that were then shipped to Nigeria.

## WAYS, MANNERS, AND MEANS

The ways, manners, and means by which GARUBA and his co-conspirators carried out
the primary objects of the conspiracy included, but were not limited to, the following:

11.     The conspirators used online dating websites including, but not limited to,
Match.com, eharmony.com, and Zoosk.com to meet and defraud "romance scam" victims.

12.     The conspirators established purported relationships with "romance scam" victims
by misrepresenting their identities and making false promises. For instance, the conspirators
often claimed to be residents of the United States who were working abroad.

13.     The conspirators established purported relationships with the "romance scam"
victims by using a variety of means and facilities of interstate communications including, but not
limited to, text message and email.

14.     The conspirators fraudulently induced "romance scam" victims to send funds by
electronic funds and wire transfers.

15. The conspirators fraudulently induced "romance scam" victims to send cash and money orders through the United States Postal Service ("USPS"), United Parcel Service ("UPS"), and Federal Express ("FedEx") to specific addresses in the United States, including an address located in the Eastern District of Virginia.

16. The conspirators fraudulently represented to "romance scam" victims that they encountered a crisis for which they needed money and property from the victims.

17. The conspirators fraudulently represented to "romance scam" victims that they needed money to complete their work. In some instances, the conspirators made requests for tens of thousands of dollars at a time.

18. The conspirators fraudulently represented to "romance scam" victims that they needed money in order to facilitate their return to the United States.

19. The conspirators fraudulently promised to repay the "romance scam" victims.

20. GARUBA and other conspirators received packages, money, and other property from the "romance scam" victims.

21. GARUBA and other conspirators deposited cash received from "romance scam" victims into bank accounts.

22. GARUBA used the fraudulently obtained proceeds to issue checks and other monetary instruments, made payable to himself.

23. GARUBA and other conspirators used the funds received from "romance scam" victims to purchase vehicles sold through automobile auction companies.

24. GARUBA and other conspirators arranged to ship vehicles purchased with funds received from "romance scam" victims from the United States to Nigeria using companies specializing in exporting goods from the United States.

25.     GARUBA and other conspirators communicated with each other and coordinated
acts in furtherance of the conspiracy through WhatsApp, which is an online messaging service.

OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, GARUBA and his co-
conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including,
but not limited to, the following:

Victim 1

26.     In and around May 2017, an unknown co-conspirator posing as "Matt Stierand"
on Zoosk.com began a purported relationship with Victim 1. "Stierand" posed as a man who
worked in construction projects.

27.     From in and around May 2017 until in and around August 2018, "Stierand"
fraudulently induced Victim 1 to send approximately $1,300,000 in funds through interstate bank
transfers and the mail.

28.     From in and around May 2017 until in and around June 2017, Victim 1 sent
$29,000 in funds to bank accounts controlled by GARUBA. Victim 1 also sent approximately
$65,000 in cash via UPS to GARUBA's residence in Woodbridge, Virginia, which is located in
the Eastern District of Virginia.

29.     In and around May 2017, "Stierand" informed Victim 1 that all of his financial
funds were committed to construction projects. "Stierand" asked Victim 1 to send him funds,
which he represented that he would then use to finish his construction projects.

30.     On or about May 22, 2017, "Stierand" fraudulently induced Victim 1 to send a
wire transfer of $20,000 to a SunTrust account ending in 4821. This account was in the name of

8

Revival Trade Links and is controlled by GARUBA (hereinafter, the "Revival SunTrust account").

31.     On or about May 23, 2017, GARUBA used a portion of the fraudulently obtained funds from the Revival SunTrust account to obtain a cashier's check for $5,000.

32.     On or about May 23, 2017, GARUBA used the $5,000 cashier's check to purchase a 2005 Toyota Corolla through an online auction company (hereinafter "Company 1").

33.     On or about May 26, 2017, GARUBA used a portion of the fraudulently obtained funds from the Revival SunTrust account to issue an outgoing check for $7,008, made payable to himself.

34.     On or about June 5, 2017, "Stierand" fraudulently induced Victim 1 to send a wire transfer of $9,000 to a Capital One account ending in 4912. This account was in the name of Revival Trade Links, Inc. and is controlled by GARUBA (hereinafter, the "Revival Capital One account").

35.     On or about June 6, 2017, GARUBA used a portion of the fraudulently obtained funds from the Revival Capital One account to issue an outgoing check for $4,000, made payable to a company, which transports vehicles within the United States (hereinafter "Company 2").

36.     On or about June 22, 2017, "Stierand" fraudulently induced Victim 1 to send $5,000 in cash via UPS to GARUBA's residence in Woodbridge, Virginia.

37.     On or about July 17, 2017, "Stierand" fraudulently induced Victim 1 to send $20,000 in cash via UPS to GARUBA's residence in Woodbridge, Virginia.

38.     From on or about July 28, 2017 to on or about August 11, 2017, approximately $12,500 in U.S. currency was deposited into GARUBA's Navy Federal Credit Union savings account ending in 8285 (hereinafter the "NFCU savings account").

39.     From on or about July 28, 2017 to on or about August 11, 2017, $4,900 in funds from GARUBA's NFCU savings account was used to issue two cashier's checks made payable to Company 1.

40.     From on or about July 28, 2017 to on or about August 11, 2017, the $4,900 in cashier's checks made payable to Company 1, which are referenced in paragraph 39, were applied towards the purchase of vehicles with Company 1.

41.     From on or about August 1, 2017 to on or about August 10, 2017, GARUBA arranged for a company specializing in exports (hereinafter "Company 3") to export seven vehicles, which were purchased with fraudulently obtained proceeds, to Nigeria.

42.     From in and around May 2017 until in and around August 2018, "Stierand" fraudulently induced Victim 1 to send $40,000 in cash via UPS to GARUBA's residence in Woodbridge, Virginia.

## Victim 2

43.     In and around July 2017, an unknown co-conspirator posing as "Dixie Toy" on eHarmony.com began a purported relationship with Victim 2.  "Toy" posed as a woman who lived in California.

44.     From in and around July 2017 until in and around November 2018, "Toy" fraudulently induced Victim 2 to deposit approximately $105,079 in cash into various bank accounts.

45.     From in and around February 2018 until in and around November 2018, Victim 2 deposited approximately $38,839 into bank accounts controlled by GARUBA.  "Toy" fraudulently informed Victim 2 that GARUBA was an accountant, who would forward his money to lawyers in the United Kingdom.

46.     On or about February 5, 2018, "Toy" fraudulently induced Victim 2 to deposit $9,500 into GARUBA's Navy Federal Credit Union checking account ending in 1416 (hereinafter the "NFCU checking account").

47.     On or about February 5, 2018, GARUBA withdrew $4,200 in cash from his NFCU checking account.

48.     On or about February 9, 2018, "Toy" fraudulently induced Victim 2 to deposit $9,500 into GARUBA's NFCU checking account.

49.     On or about February 9, 2018, GARUBA transferred $6,500 from his NFCU checking account to his NFCU savings account.

50.     On or about February 9, 2018, GARUBA used a portion of the fraudulently obtained funds from his NFCU checking account to obtain a cashier's check for $5,000, made payable to Company 3.

51.     From on or about February 14, 2018 until on or about March 5, 2018, GARUBA arranged for Company 3 to export seven vehicles, which were purchased with fraudulently obtained proceeds, to Nigeria.

52.     On or about June 26, 2018, "Toy" fraudulently induced Victim 2 to deposit $5,000 into GARUBA's NFCU checking account.

53.     On or about June 27, 2018, GARUBA used a portion of the fraudulently obtained funds in the NFCU checking account to send an outgoing wire for $2,600.

54.     On or about June 29, 2018, GARUBA used a portion of the fraudulently obtained funds in his NFCU checking account to send an outgoing check to Company 3.

55.     On or about July 2, 2018, "Toy" fraudulently induced Victim 2 to deposit $5,000 into GARUBA's NFCU checking account.

11

56.     On or about July 3, 2018, "Toy" fraudulently induced Victim 2 to deposit $5,000 into GARUBA's NFCU checking account.

57.     On or about July 5, 2018, GARUBA used a portion of the fraudulently obtained funds in his NFCU checking account to obtain a cashier's check for $7,500.

58.     On or about July 5, 2018, GARUBA used the $7,500 cashier's check to purchase a 2009 Toyota Camry through Company 1.

59.     On or about July 11, 2018, GARUBA arranged for Company 3 to export four vehicles, which were purchased with fraudulently obtained proceeds, to Nigeria.

60.     On or about July 13, 2018, "Toy" fraudulently induced Victim 2 to deposit $3,189 into GARUBA's NFCU checking account.

61.     On or about July 16, 2018, GARUBA used a portion of the fraudulently obtained funds from the NFCU checking account to send an outgoing check to Company 3.

62.     On or about July 17, 2018, GARUBA used a portion of the fraudulently obtained funds from the NFCU checking account to obtain a cashier's check for $3,200.

63.     On or about July 17, 2018, GARUBA used the $3,200 cashier's check to purchase a 2005 Toyota Rav4 through Company 1.

64.     On or about August 11, 2018, GARUBA arranged for Company 3 to export the 2005 Toyota Rav4 to Nigeria.

65.     From or about August 11 to 18, 2018, GARUBA arranged for Company 3 to export five other vehicles, which were purchased with fraudulently obtained proceeds from victims of this conspiracy, to Nigeria.

66.     On or about July 30, 2018, "Toy" fraudulently induced Victim 2 to deposit $1,200 into GARUBA's NFCU checking account.

12

67. On or about November 5, 2018, "Toy" fraudulently induced Victim 2 to deposit $450 into Garuba's Auto LC Navy Federal Credit Union checking account ending in 5773.

### Victim 3

68. In and around July 2017, Victim 3 began a romantic relationship with an individual using the name "Robert Henry Phillip" on Match.com. "Phillip" posed as a man who lived in Arizona.

69. From in and around July 2017 until in and around November 2018, "Phillip" fraudulently induced Victim 3 to send over $100,000 in funds through interstate bank transfers and other means, including $23,000 to bank accounts controlled by GARUBA.

70. On or about November 3, 2017, "Phillip" fraudulently induced Victim 3 to send via wire transfer $11,000 to Garuba's Auto Nigeria Limited Compan [sic] SunTrust checking account ending in 1546 (hereinafter "Garuba's Auto Nigeria SunTrust account").

71. On or about November 3, 2017, "Phillip" fraudulently induced Victim 3 to send via wire transfer $12,000 to the Revival SunTrust account.

72. On or about November 6, 2017, GARUBA used a portion of the fraudulently obtained funds in the Revival SunTrust account to issue an outgoing check for $4,000, made payable to himself.

73. On or about December 4, 2017, GARUBA used a portion of the fraudulently obtained funds in Garuba's Auto Nigeria SunTrust account to issue an outgoing check for $2,500, made payable Company 2.

74. On or about December 21, 2017, GARUBA used a portion of the fraudulently obtained funds in Garuba's Auto Nigeria SunTrust account to issue an outgoing check for $3,200, made payable to himself.

13

75.     On or about January 5, 2018, GARUBA used a portion of the fraudulently obtained funds in Garuba's Auto Nigeria SunTrust account to issue an outgoing check for $5,000, made payable to himself.

### Victim 4

76.     In and around July 2017, Victim 4 began a romantic relationship with an individual using the name "Lavern Lane" on Facebook.  "Lane" posed as a woman who lived in Oregon with her daughter.

77.     From in and around July 2017 until in and around December 2019, "Lane" fraudulently induced Victim 4 to send approximately $1,000,000 in funds through Western Union, interstate bank wire transfers, and cash sent in boxes through USPS.

78.     From in and around September 2017 until in and around May 2018, Victim 4 sent approximately $206,700 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

79.     On or about September 2, 2017, "Lane" fraudulently induced Victim 4 to send $16,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

80.     On or about September 11, 2017, "Lane" fraudulently induced Victim 4 to send $16,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

81.     On or about September 21, 2017, "Lane" fraudulently induced Victim 4 to send $16,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

82.     From on or about September 7, 2017 to on or about September 29, 2017, $24,450 in cash was deposited into Garuba's Auto Nigeria SunTrust account.

83.     On or about September 19, 2017, GARUBA used a portion of the fraudulently obtained funds from Garuba's Auto Nigeria SunTrust account to obtain a check for $5,000, made payable to Company 3.

84.     From on or about September 12, 2017 to on or about October 2, 2017, GARUBA purchased eight vehicles from Company 1 for $21,882.

85.     From in and around September to October 2017, GARUBA arranged for Company 3 to export three vehicles, which were purchased with fraudulently obtained proceeds, to Nigeria.

86.     On or about October 5, 2017, "Lane" fraudulently induced Victim 4 to send $13,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

87.     On or about October 17, 2017, $10,100 in cash was deposited into GARUBA's NFCU checking account.

88.     On or about October 20, 2017, "Lane" fraudulently induced Victim 4 to send $5,200 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

89.     On or about November 14, 2017, "Lane" fraudulently induced Victim 4 to send $10,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

90.     On or about November 22, 2017, "Lane" fraudulently induced Victim 4 to send $10,500 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

91.     On or about December 4, 2017, $4,500 in cash was deposited into GARUBA's NFCU savings account.

92.     On or about January 26, 2018, "Lane" fraudulently induced Victim 4 to send $15,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

93.     On or about February 5, 2018, "Lane" fraudulently induced Victim 4 to send $20,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

94.     On or about February 6, 2018, "Lane" fraudulently induced Victim 4 to send $20,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

15

95.     On or about February 7, 2018, "Lane" fraudulently induced Victim 4 to send $13,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

96.     On or about February 27, 2018, "Lane" fraudulently induced Victim 4 to send $14,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

97.     On or about March 3, 2018, "Lane" fraudulently induced Victim 4 to send $14,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

98.     From on or about February 5, 2018 to on or about March 16, 2018, GARUBA purchased 24 vehicles from Company 1 for a total of $51,993.

99.     On or about March 15, 2018, GARUBA used a portion of the fraudulently obtained funds from his NFCU checking account to issue a check for $8,000, made payable to Company 3.

100.    From on or about February 15, 2018 to on or about March 16, 2018, GARUBA arranged for Company 3 to export seven vehicles, which were purchased using fraudulently obtained funds, to Nigeria.

101.    On or about March 30, 2018, "Lane" fraudulently induced Victim 4 to send $14,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

102.    On or about May 14, 2018, "Lane" fraudulently induced Victim 4 to send $10,000 in cash via USPS to GARUBA's residence in Woodbridge, Virginia.

<u>Victim 5</u>

103.    From in and around 2015 until in and around 2018, unknown co-conspirators fraudulently induced Victim 5 to send approximately $100,000 in funds to GARUBA and others.

16

104.    From in and around February 2016 until in and around May 2016, Victim 5 sent approximately $40,500 directly to GARUBA in the form of checks, cashier's checks, and money orders.

105.    On or about February 12, 2016, an unknown co-conspirator fraudulently induced Victim 5 to obtain a cashier's check for $18,500, which was deposited into GARUBA's NFCU checking account.

106.    On or about February 17, 2016, GARUBA withdrew $5,000 of the fraudulently obtained funds from his NFCU checking account.

107.    On or about February 24, 2016, GARUBA transferred $5,509 in fraudulently obtained funds from his NFCU checking account to his NFCU savings account.

108.    On or about February 24, 2016, GARUBA used a portion of the fraudulently obtained funds from his NFCU savings account to issue a cashier's check for $9,509.

109.    On or about March 4, 2016, unknown co-conspirators fraudulently induced Victim 5 to obtain seven money orders totaling $7,000, which were deposited into GARUBA's NFCU checking account.

110.    On or about May 13, 2016, unknown co-conspirators fraudulently induced Victim 5 to issue a check for $15,000, made payable to GARUBA, which was deposited into GARUBA's NFCU savings account.

111.    On or about May 17, 2016, GARUBA used a portion of the fraudulently obtained funds from his NFCU savings account to issue a cashier's check for $9,950.

112.    On or about May 20, 2016, GARUBA used a portion of the fraudulently obtained funds from his NFCU savings account to issue a cashier's check for $6,500.

17

### Victim 6

113.    In and around January 2017, an unknown co-conspirator posing as "Tiffany Anne Norris" on Match.com began a purported relationship with Victim 6.  "Norris" posed as a woman who was born in Texas but moved to Malaysia when she was seven years old.

114.    From in and around January 2017 until in and around February 2019, "Norris" fraudulently induced Victim 6 to send approximately $74,000 in funds to various accounts, including approximately $26,325 in funds to the Revival SunTrust account.

115.    On or about April 15, 2017, "Norris" informed Victim 6 that "Norris" was traveling from Malaysia to Atlanta, Georgia, to visit Victim 6.

116.    On or about April 15, 2017, an unknown co-conspirator informed Victim 6 that "Norris" was arrested in Belgium because a package she was carrying contained drugs.

117.    On or about April 15, 2017, "Norris" communicated with Victim 6 via text message.  "Norris" asked Victim 6 to send her money, which she would then use to get out of jail.

118.    In and around April 2017, "Norris" provided Victim 6 with the Revival SunTrust account number and asked Victim 6 to send funds to the account.

119.    On or about April 28, 2017, "Norris" fraudulently induced Victim 6 to send a wire transfer of $5,825 to the Revival SunTrust account.

120.    On or about May 3, 2017, GARUBA used a portion of the fraudulently obtained funds in his Revival SunTrust account to issue an outgoing check for $2,500, made payable to himself.

121.    From in and around May 2017 until in around October 2018, "Norris" and other unknown co-conspirators fraudulently induced Victim 6 to send money, which "Norris" and the

other unknown co-conspirators represented would be applied to different fees related to the release of "Norris's" purported inheritance.

122.     On or about August 18, 2017, "Norris" fraudulently induced Victim 6 to send a wire transfer of $6,000 to the Revival SunTrust account.

123.     On or about August 22, 2017, "Norris" fraudulently induced Victim 6 to send a wire transfer of $6,000 to the Revival SunTrust account.

124.     On or about August 23, 2017, GARUBA used a portion of the fraudulently obtained funds in the Revival SunTrust account to issue an outgoing check for $9,600, made payable to himself.

125.     On or about August 24, 2017, GARUBA used a portion of the fraudulently obtained funds in the Revival SunTrust account to issue an outgoing check for $5,500, made payable to Company 3.

126.     On or about September 22, 2017, "Norris" fraudulently induced Victim 6 to send a wire transfer of $8,500 to the Revival SunTrust account.

127.     On or about September 29, 2017, GARUBA used a portion of the fraudulently obtained funds in the Revival SunTrust account to issue an outgoing check for $13,908, made payable to himself.

128.     In and around December 2017, "Norris" fraudulently induced Victim 6 to engage in a purported marriage ceremony over the phone.  "Norris" represented that she needed to marry Victim 6 because Malaysian law required her to be either married or engaged before she could access her inheritance.

## Vehicles

129.    From in and around January 2016 until in and around May 2019, GARUBA used fraudulently obtained proceeds to purchase approximately 200 vehicles through Company 1.

130.    From in and around May 2017 to in and around May 2019, GARUBA used fraudulently obtained proceeds to arrange for the export of approximately 156 vehicles to three unindicted co-conspirators in Nigeria.

(All in violation of Title 18, United States Code, Section 1956(h))

## COUNTS 2-3

*(Financial Transactions in Illegal Proceeds)*

131.   The allegations contained in paragraphs 1 through 8 and 11 through 130 of this Indictment are re-alleged and incorporated as though set forth in full here.

132.   On or about the following dates, each being a separate count, within the Eastern District of Virginia and elsewhere, the defendant, ABDUL RASAK GARUBA, knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity; namely, the wire fraud, mail fraud, and conspiracy to commit mail and wire fraud scheme as described in Count 1 of this Indictment.

| Count | Date | Financial Institution | Transaction Type | Amount |
|-------|------|----------------------|------------------|--------|
| 2 | October 10, 2017 | SunTrust | Outgoing Wire | $17,270 |
| 3 | September 17, 2018 | Navy Federal Credit Union | Outgoing Wire | $22,500 |

(In violation of Title 18, United States Code, Sections 1957 and 2)

THE GRAND JURY FINDS PROBABLE CAUSE FOR FORFEITURE AS DESCRIBED
BELOW:

## FORFEITURE NOTICE

Pursuant to Rule 32.2(a), the defendant is hereby notified that, if convicted of any of the
money laundering offenses alleged in Counts 1-3 above, he shall forfeit to the United States,
pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the money
laundering offense of conviction, or any property traceable to such property, including, but not
limited to, a sum of money equal to at least $3,236,379 in United States currency, representing
the amount of money involved in the violations of 18 U.S.C. §§1956(h) and 1957.

(In accordance with Title 18, United States Code, Section 982 and Rule 32.2(a), Federal
Rules of Criminal Procedure)

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson of the Grand Jury

G. Zachary Terwilliger
United States Attorney

By:

Carina A. Cuellar
Kimberly R. Pedersen
Assistant United States Attorneys