IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-201 |
| | ) | |
| ABDUL RASAK GARUBA, | ) | Hon. T.S. Ellis, III |
| | ) | |
| Defendant. | ) | Sentencing Date: March 11, 2022 |
| | ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The defendant, Abdul Rasak Garuba, comes before the Court for sentencing after pleading guilty to engaging in financial transactions in illegal proceeds, in violation of Title 18, United States Code, Section 1957. The defendant was part of an active, far-reaching, and devastating romance fraud scam, which mainly targeted elderly victims and has inflicted untold financial losses, pain, and suffering. The defendant played a critical role in this scam because he, and others like him, used the victims' lifesavings to purchase and then ship used cars to the Nigerian conspirators. Without the defendant's help, the illegal proceeds would never have reached the fraudsters directing the scam.

The United States has reviewed the Presentence Investigation Report prepared in this case and concurs with the findings of the Probation Office, including the determination that the defendant's guideline range is 21 to 27 months. For the reasons stated herein, the United States respectfully submits that a sentence of 21 months of incarceration is reasonable and reflects the seriousness of the defendant's criminal conduct and will deter others from laundering money swindled from victims.

Further, the United States agrees that the defendant has assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This one-level decrease has already been considered by the Probation Office in its guideline calculations and is reflected in paragraph 60 of the Presentence Report.

I.   Factual and Procedural Background

   A. Background on the Investigation

Each year, millions of elderly Americans are victimized by fraudsters. To combat the mounting losses from elderly fraud, the Federal Bureau of Investigation ("FBI") has setup several ways citizens may report suspected fraud. This investigation was opened after citizens filed such complaints with the FBI. Unfortunately, once FBI agents began pealing back the onion, they discovered that Nigerian citizens had successfully defrauded mainly elderly Americans of nearly three million dollars, which represented many of the victims' lifesaving.

Upon opening this investigation, law enforcement began interviewing the victims. It quickly became apparent that conspirators befriended victims on dating applications like eHarmony, Zoosk, and Match.com. After striking up conversation, the fraudsters convinced mostly elderly individuals that they were in love and intended to marry and establish a life together. Prior to meeting in person, however, the fraudsters always articulated a reason why they needed the victims to send money. Their reasons for needing funds varied from needing money for their businesses, economic hardship, to obtain their release from unlawful imprisonment, or for legal and other fees associated with obtaining a substantial inheritance.

None of these reasons were true. And when the victims ran out of money, the fraudsters ran out of time for the victims. Thus, leaving many victims with broken hearts and little financial means to support themselves.

  B. <u>How the Fraudsters Executed the Scheme to Defraud</u>

  This is a sophisticated scheme. Based on all currently obtained evidence, it appears that the conspirators targeted lonely and mainly elderly Americans on dating applications. The fraudsters then went to incredible lengths to gain the trust and affections of the victims. In at least one instance, a fraudster engaged in highly intimate communications with a victim. After gaining the victims' trust and confidence, the fraudsters induced the victims to wire thousands of dollars at a time to various individuals operating in the United States. In some instances, when concerned bank employees worried that victims were being defrauded and prevented such transfers, the victims resorted to sending shipments of cash containing tens of thousands of dollars to various individuals located in the United States.

  After the American-based conspirators received the wire transfers and boxes containing tens of thousands of dollars, some of the conspirators used online car auction websites to bid on used cars. After using the victims' hard-earned money to purchase used cars, the American-based conspirators then arranged the export of such vehicles to three men located in Nigeria. The Nigerian conspirators then sold the cars and pocketed the money. This cycle continued for years and ultimately drained the victims of nearly three million dollars.

  C. <u>The Defendant's Role in this Conspiracy</u>

  The defendant was a critical American-based conspirator. Beginning in February 2016, the defendant began receiving wire transfers from Americans located throughout the country.

Many of these wire transfers listed the name of the victim who initiated the transfer. Most of the transfers were in the thousands; however, the transfers were almost always kept to less than $10,000. To receive these transfers, the defendant opened bank accounts at countless financial institutions. Such conduct is common for money launderers, who want to ensure that they are able to pivot to different accounts when suspicious financial institutions begin closing accounts for suspected or reported fraud.

These endless wire transfers continued unabated for years. Critically, very early in this conspiracy, a romance fraud victim contacted his bank to complain that he was swindled and that the money he wired to the defendant was induced through fraud. The victim's bank moved quickly to contact the defendant's financial institution. The defendant's financial institution then initiated an investigation.

During this investigation, the financial institution's employees spoke with the defendant on several occasions. On each occasion, the defendant lied. First, he claimed that he was in business with the individuals wiring him the money. He claimed that he purchased the "cars for the person that sent him the wires." This was his first lie. The defendant did not know the victims or communicate with the victims, and he certainly was not in business with the victims. Second, the defendant claimed that he had paperwork, which could prove his assertions. This was his second lie. Unsurprisingly, when he failed to produce this paperwork, the financial institution closed his account for fraud and returned the victim's money.

The defendant continued unfazed when his account was closed. After all, he already had numerous accounts open at countless other institutions. And thus, for years, he continued to receive cash deposits from victims with non-Nigerian sounding names. Inexplicably, the

defendant also received over $100,000 in boxes shipped by two elderly victims. According to one victim, who wrote down the amounts he sent on his United States Postal Service receipts, he sent the defendant well over 100,000 in cash. The second victim's records indicate that she sent over $40,000 in boxes to the defendant. There is no question that the defendant knew at this point that he was a critical component in a massive fraud scheme. Nevertheless, he used the fraudulent proceeds to purchase and then ship used vehicles to the three Nigerian conspirators. During this period, the defendant understood he was engaged in a crooked and corrupt business; however, he continued undeterred.

Then in September 2018, an automobile auction company closed the defendant's account because a victim reported that her wire transfer was induced through fraud. Again unfazed, the defendant continued to conduct business with his conspirators. The defendant only ceased his crooked activity when the FBI searched his home. During this search, law enforcement seized electronic communications between the defendant and the Nigerian conspirators. These communications revealed that the defendant continued to aid the fraudsters even after his accounts were closed for fraud. Further, law enforcement also seized copious amounts of recordkeeping. In handwritten notes, the defendant seemed to identify the amount deposited and for which conspirator the money was intended. However, his notes never identified the individuals who deposited the funds, despite many of his bank records displaying this information, including records seized from his home.

In total, investigators have determined that the defendant received approximately $437,364 from at least seven known victims. However, the United States has agreed that it was reasonably foreseeable to the defendant that $150,000 to $250,000 of this amount constituted

illegal proceeds. This is based on when the defendant's bank account was closed for fraud and when he began receiving shipments of cash.

II. <u>Analysis of Sentencing Factors</u>

In addition to the properly calculated guideline range, this Court is also required to consider the sentencing factors identified in 18 U.S.C. § 3353(a). Those factors weigh in favor of imposing a sentence of 21 months of imprisonment.

    A. <u>The Defendant's Actions Caused Severe Suffering</u>

First, and most importantly, the defendant's actions caused emotional suffering. The defendant was an active participant in a far-reaching fraud scheme that succeeded in destroying the lives of at least seven victims. During the defendant's active involvement, he transferred approximately 15% of the nearly 2.9 million dollars that fraudsters swindled out of the victims. During this period, the defendant well knew much of this money was obtained through fraudulent means and that he was furthering the fraud.

The victims are devastated. And it is only with great difficulty that one can read the victim-impact statements submitted in this case. One elderly victim now lives and sleeps out of their vehicle. Two other elderly victims lost their lifesavings and struggle to provide for themselves. A single mother of four children was forced to file for bankruptcy. All these victims have deep emotional wounds from being manipulated and exploited. And there is no doubt that they would have suffered far less if the defendant was not furthering the scheme through his vital middleman role. He is the one that turned the money into a useable form that could be shipped out of the country to Nigeria. Without someone like the defendant, there simply would be no point in committing this fraud.

Critically, the defendant knowingly and actively took part in this scheme when he well knew there were people and lives behind the money sent to him. The victims deserve justice. Put simply, no one in our society should lose their lifesavings and self-respect in this manner.

B. <u>The Defendant's Sentence Must Specifically Deter Him</u>

Second, this case also strongly implicates the need to impose a sentence that will specifically deter the defendant. For over three years, the defendant engaged in a crooked and corrupt business in the face of at least two accounts being closed for fraud. The defendant knew that the money he laundered was stolen from the individuals named in his bank account statements. He also knew no legitimate business accepts boxes containing tens of thousands of dollars. It is unacceptable to run a business that aids others in inflicting such harm. And it is imperative moving forward that this defendant understand that he must operate his businesses above board, so that he does not once again aid others in committing a devastating fraud.

C. <u>The Defendant's Sentence Must Deter Others</u>

Third, and it goes without saying, this case strongly implicates the need to impose a sentence that will deter others. Each year, millions of elderly Americans fall victim to some type of financial fraud scheme, including romance schemes. In the most recent reported year, elderly fraud losses topped three billion dollars, with many elderly people left without the means to support themselves. Equally worrisome, is the terrible emotional toll inflicted upon a population who are often less inclined to report fraud because they are ashamed and fear how their relatives will react.

This defendant's fraudulent conduct has been committed by countless others in this district and across the nation. And many of these fraudsters believe they are less culpable than

7

other fraudsters in the scheme because they carved out a role where they do not directly interact with victims. Nothing could be further from the truth. The defendant's sentence must therefore serve as a warning to others that ours is a society of laws and that individuals who engage in such harmful frauds will receive stiff but fair punishments.

III.     Conclusion

The United States understands that it is has a responsibility to both the community and the defendant. While the defendant has no criminal history and did not directly speak to the victims, his conduct contributed to significant financial losses and emotional harm. It is in society and the defendant's interest that he learns from his mistakes, serves his punishment, and grows to become a productive member of our society. In its duty to strike an appropriate balance, the United States believes that a 21-month term of imprisonment is appropriate. Such a sentence would account for the harm the defendant caused to the victims and send a message to other criminals that laundering fraudulent funds is a serious crime and will be punished.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:    /s/
Carina A. Cuellar
Kimberly Riley Pedersen
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  (703) 299-3700
Fax:    (703) 299-3980
E-mail: carina.cuellar@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic copy to all counsel of record.

In addition, I hereby certify that on March 4, 2022, I emailed a copy of the foregoing to the following address:

Kenneth G. Orsino
United States Probation Officer
8809 Sudley Road, Suite 200
Manassas, VA 703-366-2109
Kenneth_Orsino@vaep.uscourts.gov

/s/
Carina A. Cuellar
Assistant United States Attorney